IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| CHARLES C. CLARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10-3512-CV-S-RED |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### ORDER

Plaintiff Charles C. Clark ("Plaintiff") seeks judicial review of the Commissioner's denial of his request for disability benefits under Title II and supplemental security income under Title XVI of the Social Security Act. Plaintiff has exhausted all of his administrative remedies, and judicial review is now appropriate. After carefully reviewing the record, the Court hereby **AFFIRMS** the decision of the Administrative Law Judge (the "ALJ").[1]

### BACKGROUND

The parties present complete facts and arguments in their briefs. The ALJ's decision also sets forth comprehensive findings of fact and conclusions of law. The parties' facts and arguments and the ALJ's findings and conclusions are repeated herein only as necessary to explain the Court's decision.

### LEGAL STANDARD

The Court's review is limited to determining whether the Commissioner applied the correct

---

[1] Because the Court finds that substantial evidence supports the ALJ's decision and that the ALJ applied the correct standard of law, the Court adopts much of Defendant's brief without quotation or citation.

standard of law and whether the Commissioner's findings of fact are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3); *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). Substantial evidence is relevant evidence that a reasonable mind would accept as sufficient to support the Commissioner's conclusion. *See Warburton*, 188 F.3d at 1050. In making this determination, the Court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it. *See id.* The Court may not reverse the Commissioner's decision merely because substantial evidence supports a different result. *See Pierce v. Apfel*, 173 F.3d 704, 706 (8th Cir. 1999). This is true even if the Court might have weighed the evidence differently and reached a different result if a *de novo* review were applied. *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

To receive disability benefits a claimant must show: (1) a medically determinable physical or mental impairment that has lasted, or can be expected to last, for not less than twelve months; (2) an inability to engage in any substantial gainful activity; and (3) the inability results from the impairment. *See* 42 U.S.C. §§ 423 (d)(1)(A), (d)(2); *see also Timmerman v. Weinberger*, 510 F.2d 439, 442 (8th Cir. 1975). The Court reviews the ALJ's decision to determine whether the ALJ followed the Commissioner's implementing regulations, which set out a five-step, burden-shifting process for determining whether the claimant has a "disability" within the meaning of the Social Security Act.

The five steps are: (1) whether the claimant is currently engaging in "substantial gainful activity," (2) whether the claimant is severely impaired, (3) whether the severe impairment is, or is comparable to, a listed impairment precluding substantial gainful activity as a matter of law, (4) whether the claimant, with her current Residual Functional Capacity ("RFC") can meet the demands

of her past work, and if not; (5) whether the claimant retains the capacity to perform any other work that exists in significant numbers in the economy. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (discussing the five-step analysis). In the first four steps, the burden is on the claimant to prove that she is disabled. If the claimant is not able to perform her past work, the burden shifts to the Commissioner to prove that there are jobs in the national economy that the claimant can perform, although the ultimate burden of persuasion remains with the claimant. *See Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004); *see also Barnhart v. Thomas*, 540 U.S. 20, 24, 28 (2003) (noting that the existence of jobs in the national economy must be proved only at step five).

## ANALYSIS

Plaintiff alleges the ALJ committed several errors in finding that he was not disabled. Plaintiff alleges that the ALJ erred (1) in determining that his only severe impairments is "traumatic arthritis with a history of foot injury" (Tr. 10), (2) in discounting the opinion from Plaintiff's treating physician, (3) in not properly determining his RFC, and (4) in not properly determining that Plaintiff could perform his past work as a custodian.

***The ALJ did not err in failing to find that Plaintiff suffered from additional severe impairments or that his depression was not a severe impairment***

Plaintiff first challenges the ALJ's determination by arguing that the ALJ erred by limiting his severe impairments to a finding of traumatic arthritis with a history of foot injury. Plaintiff states that the records show that he suffered from depression, low-average intelligence, impaired concentration, arthritic joint pain and low back pain. Plaintiff also notes that the standard under Step Two for determining whether an impairment is severe is not a burdensome standard; however, the Court notes that "it is also not a toothless standard" and the burden is on Plaintiff to prove that his

3

impairments are severe. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007).

With respect to whether Plaintiff suffers from chronic back pain and joint pain, the Government correctly notes that these cannot constitute impairments under the regulations because they are symptoms, not impairments. *See* 20 C.F.R. §§ 404.1569a; 416.969a (referring to pain as a symptom of an impairment); SSR 96-4p ("A 'symptom' is not a 'medically determinable physical or mental impairment' and no symptom by itself can establish the existence of such an impairment"). With this in mind, the Court notes that Plaintiff has failed to meet his burden in demonstrating that his chronic back pain and joint pain are evidence of a severe impairment. There is no objective medical evidence in the record that corroborates his complaints of back pain and joint pain. *See East v. Apfel*, 187 F.3d 641 (8th Cir. 1999) (unpublished opinion) (noting that a lack of objective evidence is "strong evidence of [a] lack of a severe impairment") (citing *Stephens v. Shalala*, 50 F.3d 538, 541 (8th Cir. 1995)). In fact, as the ALJ noted in his opinion, an x-ray of Plaintiff's right knee revealed no abnormalities, a physical examination came back with unremarkable findings, a leg raising examination was negative and lastly, Plaintiff was found to have a good range of motion. (Tr. 13). For these reasons, the Court finds that the ALJ did not err in finding Plaintiff's chronic back pain and joint pain were not severe impairments.

Concerning whether Plaintiff's depression is severe, the Government correctly notes that the regulations require an ALJ to engage in several steps in order to make this determination. 20 C.F.R. §§ 404.1520a; 416.920a. Once it is determined that a claimant has a medically determinable impairment, the ALJ must rate the degree of functional limitation caused by the impairment, which requires an ALJ to consider how the impairment affects a claimant's "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." §§

4

404.1520a(c)(3); 416.920a(c)(3). If a claimant is found to have a degree of limitation categorized "as 'none' or 'mild' " in the first three categories and a degree of limitation of 'none' in the fourth category, then an ALJ "will generally conclude that [a claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." §§ 404.1520a(d)(1); 416.920a(d)(1).

The ALJ found that Plaintiff has no limitations with respect to activities related to daily living and the record supports this determination. Plaintiff stated that he did not have any difficulties with his personal care and was also able to care for his girlfriend's two-year old daughter on occasion and to handle tasks at home. The ALJ found that Plaintiff has only a mild limitation with respect to the category of social functioning and the record also supports this determination. Plaintiff stated that he did not have any difficulty in getting along with others, he lives with his girlfriend, keeps in contact with all of his children and reported that he has always been close to his parents and siblings. Dr. Brooke Whisenhunt did assign Plaintiff a Global Assessment of Functioning rating of 60 which the ALJ states "is indicative of moderate difficulty in social, occupation, or school functioning" (Tr. 11), but the ALJ also noted that this finding is somewhat inconsistent with Dr. Whisenhunt's observation that Plaintiff appeared able "to interact in demanding social situations" and was "able to adapt to his environment." (Tr. 257). The ALJ found that Plaintiff had no limitation with respect to the category of concentration, persistence, or pace, and again the record supports this finding. Plaintiff reported no problems in these areas, and Dr. Whisenhunt opined that he "seemed able to understand and remember moderately complex instructions" and "able to sustain concentration and persistence on moderately demanding tasks (Tr. 257). Finally, the ALJ correctly noted that Plaintiff did not have any episodes of decompensation

that are noted in the record. It is also worth mentioning that a state medical consultant, Dr. Kenneth Bowles, specifically found that Plaintiff did not have any severe mental impairments.

Despite the thorough analysis engaged in by the ALJ, Plaintiff nonetheless argues that the ALJ should have found his mental impairments were severe, which include his depression, low-average intelligence and impaired concentration. In support, Plaintiff relies on the fact that he was repeatedly diagnosed and treated for depression. However, Plaintiff overlooks the fact that there are records documenting that his depression improved after taking medication, there were occasions where he reported as not being depressed and he received no counseling or treatment outside of being prescribed medication. These facts undermine Plaintiff's argument. Plaintiff also cites to no evidence in the record whatsoever describing how his alleged low-average intelligence or impaired concentration constitute severe impairments. In fact, the Court has already found that the ALJ's finding that Plaintiff had no limitation on his ability to maintain concentration, persistence, or pace was supported by evidence in the record, undermining Plaintiff's argument. Finally, the Court notes that a proper challenge for Plaintiff to make to the low-average intelligence and impaired concentration impairments would be that the ALJ failed to adequately develop the record, because these alleged impairments were never discussed in the ALJ's decision. *See Kitts v. Apfel*, 204 F.3d 785, 786 (8th Cir. 2000) (discussing whether the ALJ failed to develop the record with respect to a claimant's mental impairment where the claimant did not allege such an impairment in her application or at the hearing). In this case, Plaintiff never alleged any disability relating to low-average intelligence and impaired concentration, either at his hearing or on his application. In fact, counsel for Plaintiff stated that Plaintiff "claims disability primarily due to physical impairments ... and although he does have some depression secondary to his physical problems and limitations,

6

we're alleging this is primarily a physical case." (Tr. 24-25). Even though Plaintiff does not raise this issue, the Court finds that the ALJ did not err in failing to develop the record with respect to these alleged impairments. Even though Dr. Whisenhunt "estimated" that Plaintiff's intelligence was in the low-average range, as noted above, she went on to find that Plaintiff could still "understand and remember moderately complex instructions" (Tr. 257), and he was never diagnosed with any mental disorder related to his intelligence such as mental retardation. With respect to Plaintiff's argument concerning his impaired concentration, the Court has already found that the ALJ did not err in finding that Plaintiff did not have any limitations relating to his ability to maintain concentration, persistence or pace, which undermines Plaintiff's challenge. It must also be noted that he was not diagnosed with any mental disorders, outside of his depression, at the time the ALJ issued his decision that pertains to his concentration.

Plaintiff also relies on new evidence submitted to the Appeals Council in support of the proposition that his mental impairments are severe. When new evidence is considered by the Appeals Council and the Appeals Council considers the evidence but decides to deny a request for review, the Court must decide "whether the ALJ's decision was supported by substantial evidence on the record as a whole, including the new evidence." *Davidson v. Astrue*, 501 F.3d 987, 900 (8th Cir. 2007). The new evidence consists of a report submitted by Dr. Michael Murrell, who evaluated Plaintiff at the request of Plaintiff's attorney, and new medical records concerning his visit to his local Veterans Affairs office in February, 2010.

The Court does not find Dr. Murrell's report to help Plaintiff demonstrate that his depression is severe. To begin with, Dr. Murrell assigned Plaintiff a relatively low GAF score of 48 and diagnosed Plaintiff with an undifferentiated somatoform disorder, yet this disorder was never alleged

7

by Plaintiff in his application or at the hearing as a basis supporting his request for disability. Again, the proper challenge in this case is to demonstrate that the ALJ failed to adequately develop the record, which Plaintiff does not raise. *Kitts*, 204 F.3d at 786 (8th Cir. 2000). The Court finds that the ALJ did not fail to develop the record with respect to Plaintiff's alleged somatoform disorder because there was no evidence this impairment existed until after the ALJ issued his decision. Outside of Dr. Murrell's diagnosis of somatoform disorder, the report does not contain any discussion of Plaintiff's depression or contain any information undermining the ALJ's determination that his depression was not severe.

Finally, turning to the additional medical records from the VA's office, the records indicate that Plaintiff went to the VA's office in February, 2010, complained that he was depressed and that he stopped taking his prescribed anti-depression medication because it was not helping his depression. (Tr. 239). Dr. Don Brockman prescribed more anti-depression medication (Tr. 241) and ordered Plaintiff to participate in a mental health evaluation, which Dr. Brockman described was not urgent. (Tr. 245). Plaintiff also reported that his depression caused him to have difficulty "concentrating on things, such as reading the newspaper or watching television," and his depression made it "somewhat difficult" for him to work, "take care of things at home or get along with other people," among other limitations. (Tr. 249). The Court does not see how these additional records undermine the ALJ's finding that Plaintiff's depression was not severe. Although Plaintiff alleged, for the first time, that his depression affected his concentration, his ability to engage in daily activities and in getting along with others, this is directly contrary to the other substantial evidence in the record discussed above. Moreover, Plaintiff was examined by Dr. Murrell approximately one month before, on January 5, 2010, and none of the problems reported to Dr. Brockman were

8

included in Dr. Murrell's report. Notably, Plaintiff only complained about his physical pain (Tr. 229), he reported that he was very close to his family and spoke to them on a weekly basis (Tr. 230), he did not report any limitations when asked about his daily activities (Tr. 230-231), and he was able to complete the tasks and tests administered by Dr. Murrell (Tr. 233). Also significant is the fact that Dr. Murrell did not diagnose Plaintiff with depression. Therefore, even when the new evidence is considered, it is clear that substantial evidence supports the ALJ's finding that Plaintiff's depression was not severe.

### *Plaintiff's treating physician did not submit a treating source opinion*

For Plaintiff's second argument, he argues that the ALJ erred by not giving controlling weight to an opinion offered by his treating physician Dr. Patrick Guthrie. Generally, an opinion offered by a treating physician is entitled to controlling weight if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (internal citation and quotations omitted). In this case, Defendant notes that there is no evidence in the record to support the proposition that Dr. Guthrie was Plaintiff's treating physician. Dr. Guthrie's name only appears on one medical record, and he appears to have only co-signed the medical record in question. (Tr. 304-305, 358-59). Plaintiff's argument is especially troubling considering that at the hearing, his counsel admitted that he "attempted to get a statement from a treating medical source, but unfortunately [he was] advised as a matter of policy that this particular physician (whose name is not identified) does not complete such forms." (Tr. 25). It is apparent that Dr. Patrick Guthrie is not a treating physician and his opinion about the severity of Plaintiff's foot injury is not entitled to controlling weight. Therefore, the Court finds that Plaintiff's second argument is without merit.

9

### *The ALJ did not err in determining Plaintiff's RFC*

Plaintiff's first argument challenging the ALJ's RFC assessment concerns the fact that the ALJ did not engage in a proper function-by-function analysis of Plaintiff's functional limitations as is required under the regulations. Plaintiff argues that the ALJ does not discuss certain limitations which he argues means that it can only be inferred that the ALJ meant to find no limitations in these areas. The Court rejects this argument, as Plaintiff cites to no authority that requires an ALJ to discuss in an opinion every single limitation that a Plaintiff may have. Also supporting the Court's determination is the fact that even if what Plaintiff claims is an error, such an error would be nothing more than a "deficiency in opinion-writing technique" which would not warrant reversal, because it is clear that the ALJ carefully considered Plaintiff's relevant limitations throughout his opinion, as noted above. *Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011) (noting that an "arguable deficiency in opinion-writing technique does not require [a court] to set aside an administrative finding when that deficiency had no bearing on the outcome") (internal citation and quotations omitted).

Plaintiff next argues that the ALJ erred because he does not refer to nonexertional mental limitations. It is important to note, however, that only medically determinable impairments and any symptoms resulting from those impairments may be included in an RFC assessment. SSR 98-8p. In this case, the only medically determinable impairments found by the ALJ were plaintiff's traumatic arthritis with a history of foot injury and depression. As thoroughly discussed above, it was determined that Plaintiff's depression did not cause any work-related limitations, such as to concentration, persistence, or pace. The ALJ's findings were supported by medical evidence and other evidence in the record. Therefore, to the extent Plaintiff is challenging the ALJ's discussion

of Plaintiff's RFC in the ALJ's opinion, even if the ALJ committed error, it would again be nothing more than a deficiency in the opinion-writing and Plaintiff's argument is without merit.

With respect to Plaintiff's physical limitations, Plaintiff again states that the ALJ incorrectly rejected the opinion from his treating physician Dr. Guthrie. As noted above, Dr. Guthrie's opinion is not entitled to any deference, as he is not a treating physician. Plaintiff then argues that the ALJ should have given controlling weight to his other treating physician's opinion, Dr. Don Brockman, although it does not appear that Dr. Brockman submitted an opinion for the ALJ's review. This is consistent with counsel's representation at the hearing that he could not obtain an opinion from the Plaintiff's treating physician. Moreover, the record that Plaintiff relies on as constituting an opinion from Dr. Brockman is not an opinion, but rather Plaintiff's responses to questions asked to him and additionally, the record was not created by Dr. Brockman. (Tr. 300, 355).

Plaintiff has set forth no compelling argument as to why the ALJ's RFC assessment was in error. As such, the Court rejects Plaintiff's challenge to the ALJ's RFC determination.

### *The ALJ properly found that Plaintiff could perform his past relevant work as a custodian*

For Plaintiff's final challenge, he again attacks the form of the ALJ's opinion. Plaintiff argues that the ALJ failed to specifically discuss what the physical and mental demands of Plaintiff's past work as a custodian would constitute. As Plaintiff correctly notes, the Eighth Circuit requires the ALJ to "make explicit findings on the demands of the claimant's past work." *Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (internal citation and quotations omitted). In this case, although the ALJ did not state what the demands of Plaintiff's past relevant work were in the opinion itself, the ALJ specifically incorporates Plaintiff's description of his past relevant work rather than recite them in his opinion. Reversing the ALJ's opinion would require the Court to find that the ALJ erred

because he did not fully transcribe the limitations of Plaintiff's past work in his opinion and instead opted to incorporate what Plaintiff had already represented to the ALJ, in a Work History Report (Tr. 176-186), as constituting the demands of his past work. The Court does not find that the ALJ erred, as he incorporated the demands of Plaintiff's past work into his opinion, found those demands were consistent with medium work defined under the regulations, that the Dictionary of Occupational Title lists the job of custodian as constituting medium work, and that Plaintiff could perform his previous job as a custodian. As such, the Court rejects Plaintiff's final argument.

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the decision of the ALJ.

**IT IS SO ORDERED.**

DATED: February 24, 2012           */s/ Richard E. Dorr*
                                    RICHARD E. DORR, JUDGE
                                    UNITED STATES DISTRICT COURT